IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULO CESAR GAMEZ LIRA,

    Petitioner,

vs.                                               No. 1:25-cv-00855-WJ-KK

KRISTI NOEM, et al.,

    Respondents.

**MEMORANDUM OPINION AND ORDER ISSUING A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE**

THIS MATTER is before the Court on Petitioner Paulo Cesar Gamez Lira's 28 U.S.C. § 2241 Habeas Corpus Petition (Doc. 1) (Petition) and the Petitioner's related Motion to Issue an Order to Show Cause (Doc. 3).[1] On August 13, 2025, Gamez Lira was arrested by seven unidentified individuals in his driveway outside El Paso, Texas, and taken into federal immigration custody. Gamez Lira is presently detained at the Otero County Processing Center in Chaparral, New Mexico and is subject to removal proceedings before an Immigration Judge. He seeks a writ of habeas corpus, inter alia, prohibiting his removal from the District of New Mexico while this action is pending and ordering his immediate release from immigration custody.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Court recognizes that the Government has not had the opportunity to respond to the Petition. Therefore, the Court assumes the truth of the allegations in the Petition for purposes of this opinion and order only.

---

[1] Petitioner filed a Motion to Issue an Order to Show Cause on September 4, 2025. (Doc. 3). The Government opposes the Motion due to lack of service. *Id.*

Petitioner Gamez Lira, a Mexican citizen, is a recipient of Deferred Action for Childhood Arrivals (DACA), a status he has held since applying for the program in or around 2014.[2] Gamez Lira has lived continuously in the United States since infancy. While living in this country, Gamez Lira has become a father to four children, including an infant with his now-wife, who is a U.S. citizen. Gamez Lira is authorized to work through DACA and has held various jobs, most recently as a forklift driver. Gamez Lira's current DACA grant is set to expire in August 2026 and is renewable, though USCIS may not approve applications for renewal while an applicant is in immigration detention.

On August 13, 2025, seven ununiformed men, who did not identify themselves as law enforcement, arrested Gamez Lira, as he sat in a vehicle in his driveway outside El Paso, Texas, around 8:40 AM. Gamez Lira believes the men did not possess an arrest warrant, and no grounds for the arrest were articulated to Gamez Lira or his wife, who was also present. The men transported Gamez Lira to the U.S. Customs and Border Protection facilities at the Yleta-Zaragoza Port of Entry in El Paso, Texas, reasons for which the Petition asserts are unclear. Gamez Lira was subsequently transported to the Otero County Processing Center in Chapparal, New Mexico, where he remains presently detained.

At some point following Gamez Lira's apprehension, DHS issued a Notice to Appear (NTA), commencing immigration proceedings against Gamez Lira based on an allegation that he is an "arriving alien" subject to removal under 8 U.S.C. § 1182(a)(7)(A)(i)(1). On September 3, 2025, Gamez Lira filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241. That same day, Gamez Lira attended the first master calendar hearing in the removal proceedings. The Immigration Judge issued an order finding that the NTA is "defective" and ordered the DHS

---

[2] This section is based on the allegations in the Petition (Doc. 1), unless otherwise noted.

to amend it.  Doc. 3 at n.1.  DHS subsequently amended its NTA; the record does not provide in what way it was amended.

Petitioner seeks a writ of habeas corpus, among other forms of relief, "[p]rohibit[ing] Petitioner's removal from the United States and transfer outside the District of New Mexico during the pendency of this Action" and ordering his immediate release from ICE custody.  Doc. 1 at 20.  The Court understands the Petitioner's motion to prohibit removal from the United States and transfer outside the District of New Mexico to be requesting the Court to temporarily restrain the Respondents from taking such actions.  The Court therefore construes this request as a motion for a temporary restraining order (TRO)..  *See Tamay v. Scott*, 25-cv-00438-JAW, 2025 WL 2507011, at *1–5 (D. Me. Sept. 2, 2025).  The motion is well-taken and the Court issues a temporary restraining order, restraining the respondents from transferring Petitioner outside the state of New Mexico pending further order of the Court.  The Court does not order Petitioner's release from detention at this time, given Respondents have not had the opportunity to be heard.

I.     **Legal Standard**

The purpose of a TRO is to preserve the status quo pending adjudication of a claim for injunctive relief.  *See A.A.R.P. v. Trump*, 605 U.S. ----, 145 S.Ct. 1364, 1369 (2025).  A TRO may issue if the movant shows (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that a TRO is in the public interest.  *See M.G. ex rel. Garcia v. Armijo*, 117 F.4th 1230, 1238 (10th Cir. 2024); *D.B.U. v. Trump*, 779 F.Supp.3d 1264, 1273 (D. Colo. 2025) ("The legal standard governing TROs is the same standard governing preliminary injunctions.").  TROs are an extraordinary form of relief and must be granted only upon satisfaction of each of the four

3

factors. *See Denver Homeless Out Loud v. Denver, Colo.*, 32 F.4th 1259, 1277–78 (10th Cir. 2022).

## II.  Discussion

### A.  Jurisdiction

As a threshold matter, the Court finds that it has authority to effect preliminary relief to maintain its jurisdiction over Gamez Lira's 28 U.S.C. § 2241 petition while it remains pending. The Court's jurisdiction draws from its authority under 28 U.S.C. § 2243 and under the All Writs Act, 28 U.S.C. § 1651(a), which permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions.").

The Supreme Court has held that habeas relief is available only in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). The Court therefore finds that, at this time, a TRO preventing Petitioner's removal from the District of New Mexico is necessary to ensure it retains jurisdiction in this matter. *See Arostegui-Maldonado v. Baltazar*, ---F. Supp.3d----, 2025 WL 2280357, at *12 (D. Colo. Aug. 8, 2025) ("[I]t appears well within this Court's authority to issue an injunction preventing Maldonado's removal to preserve its jurisdiction over the Petition while it remains pending.").

### B.  Likelihood of Success on the Merits

Gamez Lira's habeas petition raises six challenges in connection with his detention centering on: violation of the Administrative Procedure Act; violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution; violation of the *Accardi* doctrine with respect to 8 C.F.R. § 236.23(d) and 8 C.F.R. § 287.8(c)(2)(i) and (ii); and violation of the Fourth Amendment

of the Constitution and 8 U.S.C. § 1357(a)(2). To warrant preliminary relief, Petitioner must show a likelihood of success on the merits of at least one of his claims. *See Alaska v. United States Dep't of Educ.*, 739 F.Supp.3d at 882–83 (D. Kan. 2024).

1. **Violation of the Substantive Due Process Clause of the Fifth Amendment of the U.S. Constitution (Count IV)**

Based on the record at this stage, the Court finds that Petitioner is likely to succeed on his claims under the Substantive Due Process Clause of the Fifth Amendment. The Substantive Due Process Clause protects a person's freedom from arbitrary confinement. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has recognized this protection applies regardless of a person's immigration status. *See id.*; *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976). In the context of immigration, a period of detention must "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

Ordinarily, an immigrant charged with removability is committed to ensure he will appear at subsequent removal proceedings; in other words, to ensure that he is not a flight risk. Here, no such risk was present. Petitioner asserts that "the renewal of DACA itself constitutes a robust showing regarding lack of flight risk or danger to the community." Pet. at 12. Indeed, to be eligible for DACA, applicants must demonstrate that they came to the United States before the age of 16, have continuous residence in the United States since 2007 and undergo a criminal background check. *See* 8 C.F.R. § 236.22(b)(1)–(6). Petitioner demonstrated these elements when he applied for deferred action over ten years ago. Moreover, Petitioner is authorized for employment and provides for four children in the United States, including an infant he has with his current wife. Therefore, he is unlikely a flight risk insofar as would justify his detention

pending the adjudication of his removal proceedings. On this basis, the Court finds that Petitioner has made a showing that he is likely to succeed on the merits of his substantive due process claim.

**2. Violation of the *Accardi* Doctrine with Respect to 8 C.F.R. § 236.23(d) (Count III).**

For similar reasons, the Petition supports that Gamez Lira is also likely to succeed on his assertion that Respondents have violated the *Accardi* doctrine with respect to 8 C.F.R. § 236.23(d). Under the *Accardi* doctrine, the government and its agencies are required to follow their own rules and regulations. *See Jagers v. Fed. Crop Ins. Corp.*, 758 F.3d 1179, 1186–87 (10th Cir. 2014). The Petition shows that Respondents did not observe the procedures for termination of DACA set forth in § 236.23(d). Therefore, Gamez Lira has shown a likelihood for success on his claim that his DACA status was effectively terminated in violation of the *Accardi* doctrine.

**3. Violation of Procedural Due Process Protections of the Fifth Amendment (Count IV).**

The Fifth Amendment guarantees all persons in the United States procedural due process, regardless of immigration status. *Zadvydas*, 533 U.S. at 693; *see also Diaz*, 426 U.S. at 77. Procedural due process requires notice and an opportunity to be heard before being deprived of a liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

The Petition demonstrates that Gamez Lira likely possessed a protectable liberty or property interest in this case. Gamez Lira has lived continuously in the United States since infancy. For the last ten years, he lived under the understanding that he was unlikely to be subject to enforcement proceedings. *See* 8 C.F.R. § 236.21(c). At the very least, he justifiably expected that his DACA status would not terminate without notice and the opportunity to respond. *Id.* § 236.23(d)(1). In contravention of that expectation, Gamez Lira was not provided any process at all in the course of his arrest, processing, and detention in immigration custody. Indeed, according to the facts as pled in the Petition, he was provided with an inaccurate NTA only after he was

inexplicably transported to an immigration processing center ordinarily reserved for persons entering the United States at the border. Pet. at 10. Therefore, on this record, the Court finds Petitioner has shown a likelihood of success on the merits of his procedural due process claim.

**4. Violation of the Fourth Amendment and 8 U.S.C. § 1357(a)(2) (Count V).**

Petitioner has demonstrated a substantial likelihood for success on his claim that his arrest and continued detention in ICE custody violated the Fourth Amendment. Although removal proceedings are civil, the Supreme Court has long acknowledged that immigration arrests and detentions are "seizures" within the meaning of the Fourth Amendment. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).

The INA authorizes immigration officers to make warrantless arrests in limited circumstances, including when an immigrant is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of aliens," and when the officer has reason to believe the immigrant is in violation of such laws or regulations and is a flight risk. 8 U.S.C. § 1357(a)(2), (5)(A)-(5). None of those circumstances appears to have been present here. Given his current DACA period is active until August 2026, Petitioner is lawfully present in this country under DHS regulations. *See* 8 C.F.R. § 236.21(c)(3).

Absent obtaining a warrant, the government was required to secure a prompt judicial probable cause determination to justify Gamez Lira's continued detention. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 107–08 (1975). Respondents obtained no probable cause determination in this case. Nor does it appear on this record at this time that they could have, given there is no evidence indicating Respondents had reason to believe Petitioner had engaged in criminal conduct. Petitioner has been lawfully present in the United States since 2014. Petitioner possesses no criminal record apart from a nearly

decade-old plea of guilty to disorderly conduct. Pet. at 9-10. Petitioner was seated in a vehicle in his driveway along with two of his children preparing to drive to one child's medical appointment at the time of his arrest. The Petition therefore demonstrates a likelihood that Gamez Lira's arrest and continued detention are unreasonable in violation of the Fourth Amendment.[3]

### 5. Violation of the Administrative Procedure Act (Count II)

The Administrative Procedure Act provides for judicial review of agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). While the record yields a strong impression that Gamez Lira's detention was arbitrary and capricious, the Administrative Procedure Act generally permits only judicial review of final agency action. *Hamilton v. Gonzales,* 485 F.3d 564, 569 (10th Cir. 2007); 8 U.S.C. §1252(a)(1). The Court does not understand a detention to fall within that category. Therefore, at this stage, the Court finds that Petitioner has not made a showing that he is likely to succeed on his APA claim.

### C. Likelihood of Irreparable Harm

Gamez Lira is likely to suffer irreparable harm if a TRO is not granted. The Petition supports that a habeas petition is the only means available to Gamez Lira to be heard and to pursue his claims against Respondents. This singular avenue will close if this Court's jurisdiction is defeated through Gamez Lira's transport to another state or removal outside the United States. Absent a

---

[3] Petitioner also asserts that his arrest violates the *Accardi* doctrine with respect to 8 C.F.R. § 287.8(c)(2)(i) and (ii) because Respondents "failed to follow immigration-specific arrest and processing regulations." Pet. at 19 (Count VI). Pointing to the regulations governing immigration officials' authority to make warrantless arrests, Gamez Lira asserts that Respondents neglected to follow the procedures applicable to immigration arrests and processing. Seeing as the Petitioner has demonstrated a likelihood of success on many of his other claims, the Court withholds a finding on this count pending further briefing by the parties. *See Alaska*, 739 F.Supp.3d at 882–83 ("Where a plaintiff seeks a preliminary injunction [or TRO] and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims.").

TRO, Respondents could transfer or remove Petitioner from the United States as soon as today. A TRO is therefore necessary to preserve the Court's jurisdiction until the parties may be heard.

### D. The Balance of the Equities and the Public Interest

Factors three and four "merge" when the government is the respondent. *D.B.U.*, 779 F.Supp.3d at 1273. Thus, the Court reviews factors three and four concurrently. Upon consideration of the limited record and these two factors, the Court finds that the equities weigh in favor of a TRO and that granting this relief is in the public interest. The potential harm to Petitioner if the TRO is not granted is serious. If Petitioner is removed from the state of New Mexico without due process, he will be without means to challenge his detention in this Court, and indeed, if he is removed from the United States, he will face significant challenges disputing any determinations about his immigration status. In comparison, the harm to Respondents is minimal. Further, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). The Court does not determine whether Respondents have violated federal law at this preliminary stage, but it follows that the public has an interest in the adjudication of claims alleging such violations. The Court finds that this factor supports the grant of a TRO.

### III. Bond

Federal Rule of Civil Procedure 65 permits the court to issue a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In this circuit, district courts "have wide discretion under Rule 65(c) in determining whether to require security, and may, therefore, impose no bond requirement." *ETP Rio Rancho Park, LLC v. Grisham*, 517 F.Supp.3d 1177, 1215 (D.N.M. 2021) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir.

2009)) (internal quotations removed). Absent further development of the record, the Court can only speculate about Respondents' damages if a restraining order is found to be improper in this case. Exercising its wide discretion, under these circumstances, the Court will impose no bond requirement at this time.

## ORDER

Respondents are hereby **ENJOINED** from removing Paulo Cesar Gamez Lira from the state of New Mexico pending further order from this Court.[4]

Pursuant to 28 U.S.C. § 2243, the Court orders the Respondents to show cause why the Court should not grant the requested relief. To give Respondents adequate time to brief the issues, Respondents shall **SHOW CAUSE** by <u>**no later than September 19, 2025**</u>. Accordingly, the Petitioner's Motion for an Order to Show Cause (Doc. 3) is **GRANTED**.

Petitioner's counsel is to immediately effectuate service on Respondents in accordance with law. To the extent Respondents have not been served, it is ordered that the **CLERK OF THE COURT** is **DIRECTED** to forward copies of this Order and the Petition for Writ of Habeas Corpus (Doc. 1) to Respondent Warden Castro at the Otero County Processing Center and to all other Respondents in care of the U.S. Attorney for the District of New Mexico.

It is further ordered that the Parties **APPEAR** before the Court for a hearing on the merits of the Petition on September 29, 2025, at 2:00 PM, Tortugas Courtroom, at the United States Courthouse in Las Cruces, NM.

## FEDERAL RULE OF CIVIL PROCEDURE 65

---

[4] Federal Rule of Civil Procedure 65(b)(2) provides that a TRO "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." The earliest hearing date the Court's schedule permits is September 29, 2025. Thus, the TRO shall be in effect until September 29, or until such date a hearing is set.

Federal Rule of Civil Procedure 65(b)(2) provides that a TRO "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." The earliest hearing date the Court's schedule permits is September 29, 2025.[5] Thus, the TRO shall be in effect until September 29, or until such date a hearing is set.[6]

Rule 65(b) sets forth certain threshold requirements that must be met before a TRO can issue. Specifically, Rule 65(b) provides: "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)–(B). The effectiveness of this Order is therefore contingent on Petitioner's satisfaction of these two procedural requirements.

/s/
_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The Court serves as a member of the Judicial Conference of the United States, a meeting of which is scheduled during the week of September 15. The Court will sit in Las Cruces the week of September 29, at which time it could hear argument in this matter.

[6] Rule 65 permits the Court to extend the effective duration of a TRO for "good cause." The Court finds good cause for the TRO to remain in effect until Petitioner and Respondents can appear before the Court.